# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

## PRO SE PRISONER CIVIL RIGHTS COMPLAINT

CASE NO. __3:22 MC (SALM)__

**PLAINTIFF(S)** [Write the name(s) of the person(s) complaining. Do not use **et al.**]

JOSEPH STEPHENSON (INMATE No. 155049)
(CLASS OF ONE - INDIGENT PLAINTIFF)

_____

_____

_____

_____

SCANNED at
and Emailed
_5/9/22_ by _____ . _43_ pages
date    initials    No.

vs.

**DEFENDANT(S)** [Write the name(s) of the person(s) you are suing. If you do not know a name, write "John Doe" or "Jane Doe." Include the defendant's rank or title if you know it. Do not use **et al.**] (please note: 'D.O.C' = Dept. of Correction' for connecticut).

CARLENE DAVIS (D.O.C. COUNSELOR SUPERVISOR);
ANGEL QUIROS-(C.T. COMMISSIONER OF CORRECTION); KRISTINE BARONE-(WARDEN, MACDOUGALL STATE PRISON); MR. CHRISTIAN BOSQUE-(CORRECTION SUPERVISOR); ANDRE ANDREAS-(CORRECTION OFFICER); LUCAS MIHALTAK-(CORRECTION SUPERVISOR); DOUGLAS LAMOUNTAIN-(CORRECTION OFFICER); DANIEL O'NEILL-(CORRECTION OFFICER); MR. YOHE-(CORRECTION OFFICER); JOHN AND JANE DOE-(OFFICERS PERSONALLY INVOLVED); RUBEN BURGOS-(CAPTAIN-CORRECTION SUPERVISOR); WILLIAM MULLIGAN-DEPUTY COMMISSIONER OF CORRECTION); DAVE MAIGA-(DIRECTOR, INMATE CLASSIFICATION); JOSEPH C. COLEMAN-(DIRECTOR, MENTAL HEALTH DEPT. MACDOUGALL PRISON); MR. ZAHEDI-(STATE PSYCHIATRIST, MACDOUGALL STATE PRISON); MR. ATKINS-(CT STATE POLICE); J. ROACH-(DEPUTY WARDEN, MACDOUGALL STATE PRISON); MS. J. BURNS-(NURSE, MACDOUGALL STATE PRISON); ELIZABETH TUGIE-(C.T. STATE COUNSELOR SUPERVISOR); MR. BETANCES-(LIEUTENANT, D.O.C DISCIPLINARY HEARING OFFICER); KATE SAUNDERS-(D.O.C COUNSELOR SUPERVISOR); JOHN AND JANE DOE-(STATE POLICE OFFICERS-PREA UNIT); JOHN AND JANE DOE-(CT, D.O.C. PREA OFFICERS); MR. LEONE-(STATE D.O.C DISCIPLINARY INVESTIGATOR); JOHN AND JANE DOE-(STATE ACTORS/OFFICERS WHO FAILED TO INTERVENE

Complete every section and **SIGN THE LAST PAGE.**

(PLEASE NOTE- OTHER DEFENDANTS INVOLVED TO BE DISCOVERED, ADDED AS THIS IS A RUSHED, INITIAL COMPLAINT. ALSO EXHIBITS ETC TO BE ADDED AS AVAILABLE.

1

## A. JURISDICTION

Because federal courts cannot hear every kind of claim, you must identify the law that says this court can hear your claim. There are two possibilities. Check one.

I can bring my complaint in federal court because I am suing:

1. ____✓____ State, county or city employees for violating my federal rights under 42 U.S.C. Sec. 1983/1985/1986; OR

2. _____ Federal employees for violating my federal rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

## B. PLAINTIFF (THE PERSON FILING THIS COMPLAINT)

If there is more than one plaintiff, attach additional pages. Provide items a, b, and c for each plaintiff.

1. First Plaintiff
   a. Full Name: JOSEPH STEPHENSON
   b. Inmate Number: 155049
   c. Correctional facility: CHESHIRE CI 900 HIGHLAND AVE, CHESHIRE, CT 06410

## C. DEFENDANT (THE PERSON WHOSE ACTIONS YOU ARE COMPLAINING ABOUT) PLEASE NOTE: THE FOLLOWING FACTS ARE MADE TO THE BEST OF PLAINTIFF'S INFORMATION, KNOWLEDGE AND BELIEF AT THIS TIME

If you are suing more than six defendants, attach additional pages. Provide items a, b, and c for each defendant. (PLEASE NOTE: DEFENDANTS WERE EITHER PERSONALLY INVOLVED IN INJURYING PLAINTIFF AND/OR PERSONALLY INVOLVED IN CONSPIRING, BEING COMPLICIT TO INJURE AND VIOLATE PLAINTIFF'S U.S. CONSTITUTIONAL RIGHTS. SEE ATTACHED PAGES):

1. First Defendant
   a. Full Name: T. GARDINER
   b. Rank or Title: STATE CORRECTIONAL OFFICER WHO ON MAY 8, 2019, DIRECTLY, PERSONALLY WAS INVOLVED IN ASSAULTING, INJURING PLAINTIFF AND FRAUDULENTLY MADE FALSE REPRESENTATIONS, CONCEALED, SUPPRESSED MATERIAL FACTS, INDUCED AND CONSPIRED WITH OTHER DEFENDANTS. ACTED WITH MALICE. VIOLATED DUTIES TO PLAINTIFF.
   c. Workplace: MACDOUGAL PRISON, 1153 EAST ST. SOUTH, SUFFIELD CT, 06080. TEL (860) 627-2100. LAST KNOW ADDRESS IN 2019. THE D.O.C CENTRAL OFFICE IS: 24 WOLCOTT HILL, WEATHERSFIELD CT 06109 TEL (860) 692-7482.

2

2. Second Defendant. *(please note; addresses listed are last known for 2019)*
   a.    Full Name: MR. CHRISTIAN BOSQUE

   b.    Rank or Title: LIEUTENANT (CORRECTIONAL OFFICER/CO SUPERVISOR)(WHO WAS PERSONALLY INVOLVED IN MALICIOUSLY, INTENTIONALLY ATTACKING, ASSAULTING, INJURING PLAINTIFF AS RETALIATION; FRAUDENTLY MADE FALSE REPRESENTATIONS; CONCEALED, SUPRESSED MATERIAL FACTS WHILST INDUCING AND CONSPIRY WITH OTHERS; VIOLATED DUTIES OWED TO PLAINTIFF).
   c.    Workplace: MACDOUGAL PRISON, 1153 EAST ST. SOUTH, SUFFIELD, CT. 06080

3. Third Defendant. (LIKE OTHER DEFENDANTS, PERSONALLY INVOLVED; ACTED FRAUDULENTLY TO CONCEAL, SUPPRESS MATERIAL FACTS; CONSPIRED, COMPLICIT WITH OTHERS, FALSE REPRESENTATIONS.
   a.    Full Name: MS. KRISTINE BARONE. (WHO ALSO WAS UNIT ADMINISTRATOR IN 2019).

   b.    Rank or Title: WARDEN/UNIT ADMINISTRATOR (WHO ACTED IN BAD FAITH TO NOT ONLY CONDONE UNETHICAL SYSTEMATIC WANTON ABUSE, EXCESSIVE USE OF FORCE BY HER SUBORDINATES BUT MACILICIOUSLY CREATED FALSE RECORDS TO HARM PLAINTIFF, DESPITE BEING ALERTED BY PLAINTIFF)
   c.    Workplace: MACDOUGALL-WALKER PRISON, 1153 EAST ST SOUTH, SUFFIELD CT 06080

4. Fourth Defendant
   a.    Full Name: MR. DOUGLAS LAMOUNTAIN

   b.    Rank or Title: CORRECTION OFFICER (WHO WAS PERSONALLY INVOLVED IN FRAUD AND CONSPIRACY TO MALICIOUSLY INFLICT ASSAULT, BATTERY, INJURY ON PLAINTIFF. HAS BEEN IMPLICATED IN OTHER SYSTEMATIC USE OF EXCESSIVE FORCE CASES. FAILED HIS DUTIES OWED TO PROTECT WELFARE OF INMATE AND TO REPORT ABUSE. FALSIFIED REPORTS).
   c.    Workplace: MACDOUGALL PRISON, 1153 EAST ST, SOUTH, SUFFIELD, CT. 06080.

5. Fifth Defendant
   a.    Full Name: ANDRE ANDREAS

   b.    Rank or Title: STATE CORRECTIONAL OFFICER (WHO CLAIMED INJURY BUT ALSO WAS PERSONALLY INVOLVED IN INFLICTING PAIN, SUFFERING, INJURY ON PLAINTIFF. FRAUDULENTLY CONCEALED, SUPRESSED MATERIAL FACTS, MADE FALSE REPRESENTATIONS. FAILED DUTY TO PROTECT.
   c.    Workplace: MACDOUGALL PRISON, 1153 EAST ST. SOUTH, SUFFIELD, CT. 06080

6. Sixth Defendant : (FAILED HIS DUTIES TO: REPORT, INTERVENE IN EXCESSIVE USE OF FORCE; TO PROTECT SAFETY, SECURITY OF PLAINTIFF. ENCOURAGED FRAUD, CONSPIRACY ETC).
   a.    Full Name: MR. LUCAS MIHALIAK.

   b.    Rank or Title: LIEUTENANT (CORRECTION OFFICER SUPERVISOR)(WHO WAS PERSONALLY INVOLVED IN MALICIOUS, BAD FAITH ACTS, FRAUD, MISREPRESENTATION, SUPRESS MATERIAL FACTS TO INJURE PLAINTIFF. FAILED TO SUPERVISE OFFICERS. IMPLICATED IN OTHER EXCESSIVE USE OF FORCE CASES.
   c.    Workplace: MACDOUGAL PRISON, 1153 EAST ST. SOUTH, SUFFIELD, CT. 06080.

## D. REASON FOR COMPLAINT

(PLEASE SEE ATTACHED FOR MORE DEFENDERS).

**WARNING: Contact Inmate Legal Aid Program. Common mistakes can get your case dismissed as frivolous or for failure to state a good legal claim.** If this happens, you will still have to pay the filing fee, even if you are proceeding in forma pauperis. To avoid losing your filing fee, please read this information carefully and consult Inmate Legal Aid Program before you file.

3

Rev. 3-18-22

1. Failure to use the prison grievance process before suing. If you have not followed all the steps in the grievance process before you come to court, the defendants may ask the Court to dismiss your claims for "failure to exhaust administrative remedies."

2. Complaining about incidents that happened a long time ago: If you are suing about events that happened more than three years ago, the defendants may ask the Court to dismiss your case under the "statute of limitations."

3. Suing people who were not personally involved: You can generally only sue defendants who were directly involved in harming you.

4. Suing defendants who have immunity to suit for money damages: You generally cannot sue the following people and entities for money damages: the State of Connecticut; agencies of the state (like the Department of Correction); the United States government; the President of the United States (for actions taken while President); judges (for actions taken in connection with judicial duties); parole board officers (for actions taken in imposing parole conditions or revoking parole); prosecutors (for actions taken in performing duties integral to the criminal judicial process). If you think you have a claim for money damages against such people or entities, check with Inmate Legal Aid Program first. If you name defendants who are immune to suit from money damages and your suit is dismissed on that basis, you will lose your filing fee.

5. Complaining about a criminal conviction or prison disciplinary proceeding that resulted in loss of good time credits or other change to your time in prison. If winning your claims "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims under Section 1983 unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding. See *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Please note that this is not a complete list of the problems you might encounter with your case. The Court cannot give you legal advice and will not appoint a lawyer for you until it is clear that you have a good legal claim. Until then, your best strategy is to call the Inmate Legal Aid Program before you file a complaint. If Inmate Legal Aid Program says you do not have a good case, you should consider that advice very seriously.

Now you need to explain how your federal rights were violated (remember that not every violation of state law or prison regulations amounts to a violation of federal law). What you need to tell the Court is who did what, when they did it, and how you were harmed.

Rev. 3-18-22

You do not need to cite to the Constitution, any statutes, or any cases. However, it is important to be specific about dates, times, and the names of the people involved. It is helpful to put each important fact in a separate, numbered paragraph.

If you do not know the name of the person who harmed you, call that person Defendant Doe and provide some information from which it will be possible to identify the person - for example, gender, rank and shift. If there is more than one defendant whose name you do not know, call them Defendant Doe1, Defendant Doe2, and so on.

Here is an example of the proper way to describe your claims:

Example of Statement of Case
1. On April 12, 2015, I fell and injured my foot during a basketball game with other prisoners.
2. After the game, I asked Defendant CO Brian Smith to let me see the nurse. Defendant CO Brian Smith told me that I could not see the nurse because it was not an emergency.
3. During the afternoon, my foot became swollen and very painful.
4. At about 5 p.m., in the presence of my cellmate Bill Bloggs, I told Defendant Lieutenant Jane Doe, who was the shift supervisor, that I needed a doctor and showed her my swollen foot.
5. Defendant Lieutenant Jane Doe brought me two Tylenol and told me that I could not see the nurse until sick call the next morning.
6. The next day, I could not get out of bed because my foot was so swollen and painful. I had to go to hospital and have an operation to fix my foot.
7. I had to take pain medication for two months after the operation and have needed a walking stick for support since that time.

Now describe your claims.

Statement of Case

1. ON OR ABOUT APRIL 5, 2019 AND _____ 2019 PLAINTIFF, (WHO IS DISABLED UNDER THE FEDERAL REHABILITATION AND AMERICANS WITH DISABILITIES/ACTS, FOR WHICH CT STATE AND DEFENDANTS ACCEPT FEDERAL FUND TO IMPLIMENT THESE AND OTHER FEDERAL PROGRAMS), FILED WRITTEN COMPLAINTS AND PRISON ADMINISTRATIVE GRIEVANCE, VERBAL COMPLAINTS ALSO AGAINST STAFF, INCLUDING SOME DEFENDANTS E.G. MR. BOSQUE, ABOUT THEIR ABUSIVE CONDITIONS OF CONFINEMENT, LOCKING PLAINTIFF AND 100+ INMATES IN THE MACDOUGALL PRISON GYM FOR ABOUT 13 HOURS, RANSACKING AND DESTROYING INMATES CELL AND PROPERTY

2. ON OR ABOUT APRIL 30, 2019 PARTLY IN RETALUATION FOR PLAINTIFFS PREVIOUS COMPLAINTS AS PLAINTIFF BELIEVES, SOME DEFENDANTS INCLUDING MR. T. GARDINER HARASSED, INTIMIDATED PLAINTIFF SUCH AS DELAYING, NOT OPENING PLAINTIFF'S CELL DOOR FOR RECREATION AND DAILY MEDICATIONS, USING XENOPHOBIC ATTITUDE AND RACIAL SLURS AGAINST PLAINTIFF (WHO IS ASIATIC. PLAINTIFF BELIEVES THAT HE IS A VICTIM OF A FEDERAL HATE CRIME AS WILL BE FURTHER DESCRIBED), PLAINTIFF REQUESTED VIDEO-PRESERVATION OF PART OF APRIL 30, 2019 INCIDENT WHERE OFFICER T. GARDNER LEFT HIS POST, OPENED PLAINTIFF'S CELL DOOR, STOOD IN DOORWAY TO HARARASS, THREATHEN, PROMISE TO RETALUTE FURTHER AGAINST PLAINTIFF.

3. ON MAY 8, 2019, SHORTLY AFTER AND PROXIMATE TO MAKING PROTESTS, COMPLAINTS AGAINST PERCEIVED HATE, BULLYING, INTIMIDATION AND SIMILAR HARASSMENT FROM MR. T. GARDINER, BOSQUE AND OTHER STATE DEFENDANTS, AT APROX __ PM CHOW TIME, WHEN PLAINTIFF GOT HIS FOOD, HE WAS AGAIN CONFRONTED AND HARASSED BY MR. CHRISTIAN BOSQUE AND OTHER DEFENDANTS WHO AGAIN THREATHENED TO RETALUATE, GET EVEN WITH PLAINTIFF FOR COMPLAINTS. BOSQUE ORDERED PLAINTIFF TO THROW HIS UNEATEN FOOD IN GARBAGE AND LOCK UP IN CELL. PLAINTIFF PRESERVED VIDEO OF ENCOUNTER.

Rev. 3-18-22

4. ON MAY 8, 2019 JUST FOLLOWING ENCOUNTER EARLIER SAME DAY WITH DEFENDANTS BOSQUE AND OTHERS, PLAINTIFF WAS NOT LET OUT OF HIS CELL BY OFFICERS SUCH AS T. GARDINER, AT APROX. 8 PM INSTEAD OF BEING ALLOWED TO TAKE NEEDED MENTAL HEALTH AND OTHER MEDICATIONS (FOR e.g., HIGH ANXIETY, PTSD, SCHITOTYPAL AND OTHER PERSONALITY AND PANIC DISORDERS), PLAINTIFF WAS SHOCK AND SUPRISE TREATMENT, RUDELY AWAKENED WHILST NAKED IN CELL AFTER DEFENDANT DOUGLAS LAMOUNTAIN, WITHOUT FAIR WARNING, OPENED PLAINTIFF'S CELL DOOR, SHOUTED ORDERS FOR PLAINTIFF TO STRIP CELL FOR SEARCH.

5. ON MAY 8, 2019 AFTER BEING RUDELY AWAKENED, SHOUTED AT AND INSULTED BY DEFENDANT LAMOUNTAIN, PLAINTIFF, STILL NAKED IN CELL, COMPLIED WITH OFFICER'S ORDER TO STRIP, TOSS VARIOUS ITEMS INTO PLASTIC BAG LAMOUNTAIN HELD OPEN AS HE STOOD OUTSIDE PLAINTIFF'S CELL DOOR. BEGINNING TO PANIC IN BACK OF CELL, PLAINTIFF SHOUTED LOUDLY FOR OFFICER TO CALL MENTAL HEALTH STAFF (WHICH HE WAS INSTRUCTED TO DO BY STAFF IF PANICKED, LAMOUNTAIN DELIBERATELY IGNORED INMATE'S CALLS FOR MEDICAL TREATMENT.

6. ON MAY 8, 2019 APROX. 8:10PM, AS PLAINTIFF, NAKED IN CELL WITH DOOR STILL LEFT OPEN BY DEFENDANTS FOR EVERYONE TO SEE AND EMOTIONALLY DISTRESSED, AS PLAINTIFF KNELT DOWN IN BACK OF CELL TO PICKUP CLOTHES, WITHOUT WARNING, CALLING A SUPERVISOR OR CODE AS REQUIRED BY DOC PROTOCOL, DUE PROCESS ETC., DEFENDANT T. GARDINER LEFT HIS POST, RAN PAST OFFICER LAMOUNTAIN AT DOOR, RAN INTO CELL, GRABBED PLAINTIFF BY THROATH AND HAND, SLAMMED PLAINTIFFS HEAD, BODY HARD TO BACK WALL, CHOCKED BEAT, RESTRAINED PLAINTIFF.

7. ON MAY 8, 2019 AS MR. GARDINER WAS BEATING, CHOCKING, MOCKINGLY RUBBING, SQUEEZING AND RUBBING INMATE'S PRIVATE PARTS CAUSING PAIN AND PLAINTIFF TO SCREAM LOUDLY FOR HELP WHICH MADE GARDINER SQUEEZE CHOKE PLAINTIFF TO TRY TO SILENCE HIM SO HE HAD HARD TIME BREATHING AS GARDINER AND LAMOUNTAIN LAUGHED, MOCKED, CALLED INMATE RACIST NAME SUCH AS "SAND NIGGER" ALICIA ETC., OTHER DEFENDANTS CHRISTIAN BOSQUE FOLLOWED BY ANDRE AND ANDREAS ALSO RAN INTO CELL, NOT TO STOP ASSAULT ON PLAINTIFF BUT TO JOIN IN BEATING, SEXUALLY ASSAULTING, SLAMMING NAKED INMATE, NOW FULLY RESTRAINED IN CUFFS BEHIND BACK DOWN ON FLOOR, OFFICERS ON TOP KICKING, HITTING INMATES IN RIBS, TORSO.

8. ON MAY 8, 2019 AS DEFENDANTS GARDINER, CHRISTIAN BOSQUE, ANDREAS, LAMOUNTAIN AND OTHERS WERE ASSAULTING AND BATTERING INMATE WITHOUT FIRST CALLING A CODE, ALERTING MEDICAL OR MENTAL HEALTH STAFF TO INIATE DE-ESCALATION PROCEDURES PRIOR TO PLANNED USE OF FORCE CALL THESE STAFF WERE FULLY AWARE OF PROTOCOLS AND PLAINTIFFS MENTAL HEALTH STATUS FROM PRIOR EXPERIENCE AND OVER 5 YEARS OF PLAINTIFF BEING HOUSE IN MACDOUGALL, DEFENDANTS MIHALIAN AND OTHERS EITHER JOINED IN ASSAULT, BATTERY, FAILED TO STOP, INTERVENE, PROTECT INMATE, BLOCKED DOOR SO OUTER CAMERAS CREW INTO CELL BLOCKED, ALTHOUGH DEFENDANT O'NEILL EVENTUALLY BROUGHT VIDEO CAMERA.

9. DEFENDANTS DELIBERATELY DID NOT FILM OFFICERS ASSAULTING, INJURING INMATE INSIDE CELL, ON AND AFTER MAY 8, 2019 DEFENDANTS FRAUDENTLY CONSPIRED, FILED FALSE NARRATIVES/REPORTS OF INCIDENT (MR. BOSQUE ACTUALLY CHANGED HIS INITIAL REPORTS TO MAKE IT APPEAR CONSISTENT WITH OTHER FALSE REPORTS) AND FALSELY CLAIMED THAT PLAINTIFF "STRUCK MR. ANDREAS IN FACE WITH OPEN FIST, SPLITTING HIS NOSE", AND THAT PLAINTIFF THREW CLOTH AT LAMOUNTAIN THEN "CHARGED" OFFICER LAMOUNTAIN AND BOSQUE PROMPTING A "SIGNAL 11" CODE, THESE FALSITIES, MISREPRESENTATIONS ARE CONTRADICTED BY WHAT CAMERA EVIDENCE EXISTS ETC.

10. ON MAY 8, 2019 AS A FULLY RESTRAINED, HALF NAKED, BLEEDING, SHOCKED, BATTERED PLAINTIFF WHOSE "BEARD WAS VISIBLY RIPPED OUT (AS WOULD LATER SHOW IN PHOTOS), PLAINTIFF HAD TO TRY TO USE WIRE AND STRING TO FIX BEARD,) WAS BEING ESCORTED TO RESTRICTIVE HOUSING UNIT/SEG, DEFENDANT T. GARDINER, KEPT BENDING PLAINTIFF'S WRIST, TO MAKE PLAINTIFF SCREAM OUT IN "PAIN TO AGITATE, BELIGERANT? (A COMMON ABUSIVE TACTIC OF DEFENDANTS), PLAINTIFF BEGGED STAFF TO CALL STATE POLICE TO PRESS CHARGES AGAIST OFFICERS, REPORT SEXUAL ABUSE (PREA CLAIM) AND GET HELP, INSTEAD, DEFENDANTS CALLED STATE POLICE MR. ATKINS, BADGE # 1021 TO CHARGE PLAINTIFF WITH ASSAULT. ATKINS TOOK PICTURES OF SOME INJURIES.

If you need more space, attach additional pages, but be as brief as possible.
(PLEASE SEE ATTACHED - CONTINUED PAGES -)

## E.    REQUEST FOR RELIEF

Tell the court what kind of relief you want. **Remember**: (1) You can only get money damages for mental or emotional injury if you were also physically injured; (2) Money damages may be reduced to pay restitution to victims of your crime and fees for a court appointed attorney, if you had one; (3) You cannot use a Section 1983 or *Bivens* action to request release from custody, a reduction in your sentence, or a restoration of good time credits. For any of these, you must request a Writ of Habeas Corpus.

1. ANY JUST, REASONABLE RELIEF COURT OR JURY THINKS IS APPROPRIATE AND FAIR FOR VIOLATION OF PLAINTIFFS STATE AND FEDERAL CIVIL CONSTITUTIONAL DUE PROCESS AND OTHER RIGHTS.

2. ORDER OF PROTECTION AND ORDER FOR DEFENDANTS TO STOP VIOLATING RIGHTS, NOT TO RETALIATE AGAINST PLAINTIFF FOR FILING SUIT

3. TO DECLARE THAT ACTIONS OF DEFENDANTS VIOLATE FEDERAL CONSTITUTIONAL RIGHTS

4. PUNITIVE, COMPENSATORY, MONETARY DAMAGES (TO BE DETERMINED), EQUITABLE, LEGAL RELIEF FOR MALICE, FRAUD, INJURY, HATE CRIME ACTS, CONSPIRACY ETC PURPITRATED BY DEFENDANTS.

5. APPOINTMENT OF LEGAL COUNSEL TO REPRESENT INDIGENT, MENTALLY ILL PLAINTIFF

**F.    DO YOU WISH TO HAVE A JURY TRIAL?  YES__✓__NO_____**

**G.    DECLARATION UNDER PENALTY OF PERJURY**

Warning: You must sign this, or your complaint will not be filed.

By signing this complaint, I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge. I understand that if I lie in this complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000. See 18 U.S.C. Sections 1621, 3571.

Signature: _____

Signed at _CHESHIRE PRISON, 900 HIGHLAND AVE_____ on _MAY 4, 2022_____
           _CHESHIRE, CCT 06410_ (Location)                 (Date)

If there are additional plaintiffs, attach another page with the name and signature of each plaintiff on it. **The complaint cannot be filed without a signature from each plaintiff**.

**H.    FINAL INSTRUCTIONS**

WARNING: Your complaint will not be filed unless you complete each of these steps:

　　　1.    Answer all questions on the complaint form.

　　　2.    Sign the Declaration under Penalty of Perjury on p. 7

Remember, the Clerk cannot file your complaint unless you take all the steps above.

7

Rev. 3-18-22

ATTACHMENT/ CONTINUATION OF 'STATEMENT OF CASE' (FROM SECTION D, PG. 6 OF COURT FORM-"PRO-SE CIVIL RIGHTS COMPLAINT).

CASE OF: JOSEPH STEPHENSON    v. COMMISSIONER OF CORRECTIONS ...

CIVIL No. _____

12). ON MAY 8, 2019, AFTER PLAINTIFF WAS SUBJECTED TO VIOLATIONS OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS AGAINST CRUEL AND UNUSUAL PUNISHMENT, DUE PROCESS, EQUAL PROTECTION OF LAW, VIOLATIONS OF VARIOUS STATE AND FEDERAL HATE CRIME PREVENTION ACTS, THE REHABILITATION ACTS, CONSPIRACY AGAINST RIGHTS ACTS, PATTERN AND PRACTICE OF CONDUCT TO DEPRIVE RIGHTS AND VIOLATIONS OF FEDERALLY PROTECTIVE ACTIVITIES ETC., PLAINTIFF WAS NOT TREATED FOR FOR PREA VIOLATIONS, INJURIES, WAS DELIBERATELY IGNORED. ALSO NONE OF THE DEFENDANTS WHO INJURED PLAINTIFF AND VIOLATED HIS RIGHTS HAVE BEEN HELD ACCOUNTABLE. THE WARDEN, PRISON MENTAL HEALTH STAFF (E.G DR JOSEPH COLEMAN, DR. ZAHEDI ALSO CONSPIRED TO VIOLATE PLAINTIFF'S RIGHTS, SUBJECT PLAINTIFF TO CONTINUED REPRISAL, PUNISHMENTS, FILED FALSE REPORTS ETC.



# Restrictive Housing Unit Status Order
## Connecticut Department of Correction

CN 9401/1
REV 6/16/16

| Facility/Unit: | MacDougall/ Walker CI (M) |
|---|---|

| Inmate name: | Stephenson, Joseph | Inmate number: | 155049 |
|---|---|---|---|

## SECTION 1 - STATUS

### Placement in Restrictive Housing Unit (check and date the appropriate description).

| | | |
|---|---|---|
| ☐ | Transfer Detention | Date: |
| ☒ | Administrative Detention | Date:    5-08-2019 |
| ☐ | Punitive Segregation | Date: |
| ☐ | Administrative Segregation | Date: |
| ☐ | Administrative Segregation Transition | Date: |
| ☐ | Special Needs Management | Date: |
| ☐ | Chronic Discipline | Date: |
| ☐ | Special Circumstances Status | Date: |

## SECTION 2 - REASON FOR PLACEMENT

The inmate's/my continued presence in the general population poses a serious threat to life, property, self, other inmates, and/or the security of the facility because:

Inmate Stephenson, Joseph #155049 P-53 was placed in Restrictive Housing Unit for assault on staff.

| Supervisor signature:    Bosque | Date:    5-8-2019 |
|---|---|
| Inmate given copy of this form:    Time:    9:00    ☐ am    ☒ pm | Date:    5-8-2019 |



# Disciplinary Report
## Connecticut Department of Correction

CN 9503/1
Rev.
2/01/16

| Facility/Unit: MacDougall/ Walker CI (M) | Report date: 5-8-2019 |
|---|---|
| Inmate name: Stephenson, Joseph | Inmate number: 155049 |

| Housing unit:p-53 | Location of incident: P-pod cell #53 | |
|---|---|---|
| Report number: *NCI-1905047* *MWCI-1905035* | Incident date: 5-8-2019 | Incident time: 8:14 ☐ am ☒ pm |
| Offense: Assault on a DOC employed | | Offense class: ☒ A ☐ B ☐ C |

**Description of violation:**

On Wednesday May 8, 2019 at approximately 8:14pm a signal 11 was announce to P-pod cell #53 involving Inmate Stephenson, Joseph #155049 (9-53). During a unit cell compliant Inmate Stephen, J. became verbally aggressive with an assisting staff member. As I walk up to the cell to check out the commotion, I observed Inmate Stephenson striping himself naked. As I attempted to give Inmate Stephenson verbal commands to cease his actions, he took his cloth and attempted to through them at me (Lt. Bosque). I step inside the cell to restraint Inmate Stephenson, J. along with Officer Andreas. Inmate Stephenson, J. then became actively resisting toward staff and assaulted Officer Andreas striking him on the bridge of the nose splitting it open. Inmate Stephenson was removed out of the cell and place in Restrictive Housing Unit.

**Witness(es):**

**Physical evidence:**

| Reporting employee (print): Bosque | Title: Lieutenant |
|---|---|
| Reporting employee (signature): *Bosg* | |

| Date: 5-08-19 | Time: 9:40 ☐ am ☒ pm | Employee requests copy: ☐ yes ☐ no |
|---|---|---|

### CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

| ☒ Administrative Detention | Date: 5-8-19 | Time: 8:30 ☐ am ☒ pm |
|---|---|---|
| ☐ Accused inmate interviewed | ☐ Informal disposition | |

| Custody Supervisor / Unit Manager name (print): Beebe |
|---|
| Custody Supervisor / Unit Manager signature: |

| Title: Lieutenant | Date: 5/9/19 | Time: 7:00 ☒ am ☐ pm |
|---|---|---|

### INMATE NOTICE

| Delivered by (print): Matthews | Delivered by (signature): |
|---|---|
| Title: Correction Officer | Date: 5/9/19 | Time: 7:50 ☒ am ☐ pm |



## Disciplinary Investigation Report
### Connecticut Department of Correction

CN 9505/2
REV 8/28/17

### SUMMARY

**Facts:**            LIEUTENANT BOSQUE STATES THAT I/M STEPHENSON ASSAULTED OFFICER ANDREAS STRIKING HIM ON THE NOSE AND SPLITTING IT OPEN.

- OFFICER ANDREAS' CN6605 STATES THAT HE WAS IN P-UNIT CONDUCTING ROUTINE CELL SHAKEDOWNS WHEN HE HEARD A COMMOTION COMING FROM P-53 CELL. WHEN THE OFFICER REPORTED TO P-53, HE WITNESSED I/M STEPHENSON ENTANGLED WITH A STAFF MEMBER WHO WAS ATTEMPTING TO SECURE THE INMATE'S RIGHT SIDE. OFFICER ANDREAS ATTEMPTED TO ASSIST BY SECURING THE INMATE'S LEFT SIDE WHEN I/M STEPHENSON DELIVERED A RIGHT HANDED OPEN FIST STRIKE TO THE OFFICER'S FACE. I/M STEPHENSON WAS SECURED TO THE GROUND WHERE OFFICER ANDREAS EVENTUALLY GUIDED THE ACTIVELY RESISTIVE INMATE'S LEFT ARM BEHIND HIS BACK. OFFICER ANDREAS WAS RELIEVED FROM THE SCENE AND SOUGHT OUTSIDE MEDICAL TREATMENT.(CN 6605 ANDREAS)
- LIEUTENANT MIHALIAK'S CN6603 STATES THAT WHEN OFFICER LAMOUNTAIN GAVE VERBAL DIRECTION TO I/M STEPHENSON TO SURRENDER SEVERAL CONTRABAND ITEMS FROM HIS CELL, THE INMATE BECAME AGITATED, STRIPPED OFF HIS CLOTHES AND THREW THEM AT STAFF, THEN CHARGED AT STAFF PROMPTING A "SIGNAL 11" TO BE CALLED. OFFICER ANDREAS WAS SENT TO ST. FRANCIS HOSPITAL. I/M STEPHENSON SUFFERED A SUPERFICIAL CUT TO HIS THUMB.(CN 6603 MIHALIAK)
- CAPTAIN BURGOS DOCUMENTS ON HIS CN6607 THAT STATE POLICE WERE NOTIFIED AND RESPONDED FOR AN INTENTIONAL/DIRECT ASSAULT RESULTING IN OUTSIDE MEDICAL TREATMENT REQUIRED.
- BASED UPON STAFF DOCUMENTATION IN MWCI-2019-05-022, I/M STEPHENSON'S ACTIONS ARE CONSISTENT WITH THE MISCONDUCT DESCRIBED IN AD 9.5 12D : <u>Assault on a Department of Correction Employee</u>. Intentionally striking or attacking a Department of Correction employee with or without the use of an object or substance or acting in such a reckless manner that one's actions cause an assault of a Department of Correction employee

**Conclusion:**            BASED UPON STAFF'S WRITTEN REPORT, INFORMATION GATHERED, THE FACILITY RECOMMENDS A GUILTY FINDING WITH THE FOLLOWING SANCTIONS:

**30** DAYS *PUNITIVE SEGREGATION*

**00** DAYS *LOSS OF COMMISSARY*

**90** DAYS *LOSS OF PHONE*

**60** DAYS *LOSS OF VISIT*

        **60** *FORFIETURE OF RISK REDUCTION EARNED CREDIT*

**NOTE:** I/M IS A MENTAL HEALTH 3, AND IS A SENTENCED A/S LEVEL 5 INMATE.

### INVESTIGATOR RECOMMENDATIONS

| | Reason: |
|---|---|
| ☐ recommend deferred prosecution | **As determined by investigation, sanctions deemed proportionate to the seriousness of this offense and the inmate's disciplinary record. This disciplinary action is intended to deter future misconduct.** |
| ☐ recommend dismissal | |
| ☐ recommend substitute charge | |
| ☒ other, specify: **GUILTY** | |

Investigator signature: LEONE          Date: 6-3-19

Copy:  inmate master file



# Disciplinary Investigation Report
## Connecticut Department of Correction

CN 9505/2
REV 8/28/17

| SUMMARY |
|---|

**Facts:**            LIEUTENANT BOSQUE STATES THAT I/M STEPHENSON ASSAULTED OFFICER ANDREAS STRIKING HIM ON THE NOSE AND SPLITTING IT OPEN.

- OFFICER ANDREAS' CN6605 STATES THAT HE WAS IN P-UNIT CONDUCTING ROUTINE CELL SHAKEDOWNS WHEN HE HEARD A COMMOTION COMING FROM P-53 CELL. WHEN THE OFFICER REPORTED TO P-53, HE WITNESSED I/M STEPHENSON ENTANGLED WITH A STAFF MEMBER WHO WAS ATTEMPTING TO SECURE THE INMATE'S RIGHT SIDE. OFFICER ANDREAS ATTEMPTED TO ASSIST BY SECURING THE INMATE'S LEFT SIDE WHEN I/M STEPHENSON DELIVERED A RIGHT HANDED OPEN FIST STRIKE TO THE OFFICER'S FACE. I/M STEPHENSON WAS SECURED TO THE GROUND WHERE OFFICER ANDREAS EVENTUALLY GUIDED THE ACTIVELY RESISTIVE INMATE'S LEFT ARM BEHIND HIS BACK. OFFICER ANDREAS WAS RELIEVED FROM THE SCENE AND SOUGHT OUTSIDE MEDICAL TREATMENT.(CN 6605 ANDREAS)
- LIEUTENANT MIHALIAK'S CN6603 STATES THAT WHEN OFFICER LAMOUNTAIN GAVE VERBAL DIRECTION TO I/M STEPHENSON TO SURRENDER SEVERAL CONTRABAND ITEMS FROM HIS CELL, THE INMATE BECAME AGITATED, STRIPPED OFF HIS CLOTHES AND THREW THEM AT STAFF, THEN CHARGED AT STAFF PROMPTING A "SIGNAL 11" TO BE CALLED. OFFICER ANDREAS WAS SENT TO ST. FRANCIS HOSPITAL. I/M STEPHENSON SUFFERED A SUPERFICIAL CUT TO HIS THUMB.(CN 6603 MIHALIAK)
- CAPTAIN BURGOS DOCUMENTS ON HIS CN6607 THAT STATE POLICE WERE NOTIFIED AND RESPONDED FOR AN INTENTIONAL/DIRECT ASSAULT RESULTING IN OUTSIDE MEDICAL TREATMENT REQUIRED.
- BASED UPON STAFF DOCUMENTATION IN MWCI-2019-05-022, I/M STEPHENSON'S ACTIONS ARE CONSISTENT WITH THE MISCONDUCT DESCRIBED IN AD 9.5 12D : <u>Assault on a Department of Correction Employee</u>. Intentionally striking or attacking a Department of Correction employee with or without the use of an object or substance or acting in such a reckless manner that one's actions cause an assault of a Department of Correction employee

**Conclusion:**
          BASED UPON STAFF'S WRITTEN REPORT, INFORMATION GATHERED, THE FACILITY RECOMMENDS A GUILTY FINDING WITH THE FOLLOWING SANCTIONS:

**30** DAYS *PUNITIVE SEGREGATION*

**00** DAYS *LOSS OF COMMISSARY*

**90** DAYS *LOSS OF PHONE*

**60** DAYS *LOSS OF VISIT*

          *60 FORFIETURE OF RISK REDUCTION EARNED CREDIT*

**NOTE:** I/M IS A MENTAL HEALTH 3, AND IS A SENTENCED A/S LEVEL 5 INMATE.

| INVESTIGATOR RECOMMENDATIONS | |
|---|---|
| ☐ recommend deferred prosecution | **Reason:**    As determined by investigation, sanctions deemed proportionate to the seriousness of this offense and the inmate's disciplinary record. This disciplinary action is intended to deter future misconduct. |
| ☐ recommend dismissal | |
| ☐ recommend substitute charge | |
| ☒ other, specify: **GUILTY** | |
| Investigator signature: LEONE | Date 5-3-19 |
| Copy:   inmate master file | |

INMATE 155049 STATEMENT OF FACTS
IN RESPONSE TO DISCIPLINARY REPORT NO. 1905047

1. This inmate absolutely Denies/is innocent of the false, fabricated charge of "Assault on a DOC employee." This charge and narrative of incident written by Lt. Bosque, is not supported by any independent, non-neutral, unbiased, uninvolved witnesses nor the actual Camera Recordings. None of the officers involved can be trusted to be reliable, unbiased witnesses, especially as the same officers entered into inmate's cell to physically, sexually assault and batter this mentally handicapped inmate without officers complying with Due Process, including the clear mandate of the "USE OF FORCE" Administrative Directives (A.D) 6.5 Section 5 etc, which clearly requires that, abscent emergency or exigent circumstances, [there was none in this case as inmate was neither a danger to himself or others, has no history of fighting, assault etc., and at all times during this incident was contained, secured within a Prison cell with a functioning lockable door], "Prior to a planned use of physical force, a Correctional Supervisor shall summon a videocamera which shall document the verbal intervention as well as the planned use of physical force... and whenever practical, treatment staff (ie., mental health...) shall be utilized Prior to a planned use of physical force..."

2. Without abiding by the "USE OF FORCE" and other required Administrative Protocols, (such as A.D. 6.7 sections 5 e (ii) and 14 c, to be discussed), and using un-necessary and excessive Physical force against this mentally handicapped inmate inside of inmate's cell without the required videocamera to document an unbiased version of incident, officers Bosque, Gardnier, Andreas and any other officers involved were able to fabricate this false charge and false narrative which makes it unfair and almost impossible for inmate to Properly defend against these false charges

1.

Since the only alleged evidence of what happened inside inmate's cell does not come from an unbiased camera but is now based on the "Word of the Officer" versus the "word of the inmate" and who is going to believe the 'word' of a 'convicted inmate?' The point is that, had a videocamera been employed, had inmate been restrained through the cell door in view of a videocamera or the unit's fixed cameras as is usually done and due process been followed, it would clearly show that these officers are not telling the truth and conspired to fabricate a false charge to attempt to conceal the assault and battery on inmate.

3).  This inmate's version of this incident is partially supported by the existing unit (P-Pod) camera and other evidence whereas the officer's version is not and is contradictory. The unit cameras will show that on May 8, 2019 this inmate remained in his single cell all day except for lunchtime and suppertime. At approx 4-4:30 PM, Lieutenant Bosque and officer Gardnier would not allow inmate to take his styrofoam dinner tray back to cell 53. Instead of arguing and to prevent any problems, inmate spoke to Lt. Bosque and complied with his direction to throw this tray into the garbage bin and return to cell 53. Thus inmate, who does not get commissary, did not eat supper. Then the camera will show that at the 6:00 PM Top tier recreation, this inmate remained inside cell 53 to avoid any problems or confrontation especially with officer Mr. Gardnier, (who on camera, on April 30, 2019 at aprox., 8:30 PM recreation, opened inmate's cell door to threaten and harass this inmate who was inside cell P-53). At medication call, this inmate was again not let out of cell P-53 to take his psychiatric medication. (Whenever officer Gardnier works in P-unit, this inmate is purposely not let out for medication during his recreation time). Then after top tier recreation was over and everyone was locked in cells,

2

this inmate was laying down in bed at aprox 8:00 PM when P-53 cell door unexpectedly opened. an officer holding a plastic garbage bag ordered this inmate to get up and strip down for a 'cell search'. This inmate complied but was startled by this unusual event. In all the several years at Macdougall Prison, this inmate has never seen a cell search done while the inmate is still inside the cell. Instead of a now naked inmate being allowed to get reclothed, this same CO (who is seen on camera standing at the door staring at this naked inmate. Contrary to Lt. Bosque DR version, the camera clearly shows that Lt Bosque is lying as he was never standing outside of inmate's cell conversing with inmate or "observed inmate stripping himself naked."), ordered a naked inmate to 'take apart' some clothing items, including socks which had some styrofoam cups inside them, and to toss them out to him as he had the large garbage bag holding at the cell door. This inmate complied but now was worried, had a panic attack and started to shout, "Why are you guys harassing me, please call mental health, I'm in my cell naked and I don't know what's going on, call mental health!" I was in the back of the cell. I absolutely did not threathen anyone or go anywhere near the officer. All of a sudden and without any warning, officer Gardnier(?) comes running into inmate's cell, attacks this naked inmate, grabs inmate hands and throath, slams inmate up against the backwall of the cell by toilet and whilst inmate is restrained, not resisting, has an officer three times inmate's size and weight pressed up against this naked inmate, this officers begins to beat up this inmate, squeeze inmates private parts. This inmate was screaming for help. (This was the "commotion" which Lt. Bosque heard but conveniently left out all the details about an officer already being in inmate cell assaulting inmate without any provocation,

3.

threath or use of physical force from this inmate. This officer did not comply with the 'use of force' protocol, did not wait for or call a supervising staff as required, was not the officer who was seen on camera initially interracting with inmate but maliciously attacked inmate inside the cell knowing full well there was no camera or another cell mate inside inmate's single cell to witness this assault and battery. The camera will also show that, contrary to lt Bosque's false report that Bosque was standing outside inmate's cell conversing with inmate and "observed inmate stripping himself naked... attempted to give inmate verbal command... inmate took his cloth and throw them" at Bosque etc, lt. Bosque did none of these things he wrote. Instead, the camera in P-Pod will actually show that after the first officer ran into inmate's cell to assault and injure this inmate, a few minutes later lt Bosque also ran into inmates cell to also assault and beat up inmate without waiting for the videocamera or standing outside the cell to issue commands or supervise restraining of inmate. Bosque clearly violated A.D. 6.5 Section 4 J which prohibits the supervisor from becoming "directly involved in physically restraining an inmate". The video/camera will also show that officer Andreas came into the cell behind Bosque. Thus there were 4 persons in this small cell area. How or if Andreas was injured in the nose is unclear to this inmate but this inmate absolutely did not "assault officer Andreas striking him on the bridge of the nose splitting it open" as Bosque wrote. If there were any such injury, it definately would have been accidental, not intentional as there were already two officers on top of this inmate beating, chocking, punching and assaulting inmate. Officer Andreas, (whom inmate has never had a problem with and inmate has no motive to 'assault'), came charging headlong into all this action and may have accidentally caught or bumped his

4

head unto someone's finger or an officers elbow. This inmate does not believe that any injuries, if they exist or as Bosque describes, are consistent with any 'strike' from inmate's fists. This makes no sense since this inmate was already restrained by Bosque and other officer. In fact, the camera will show that inmate was handcuffed **behind his back** before even exiting the cell to be taken to R.H.U, (Restrictive Housing unit/seg), with only a pair of boxer shorts on his body. Also, the pictures taken by the State Police that same night after this incident, shows no scratches, marks, bruises, blood etc., to inmate's hands which would be consistent with the type of 'strike' or injuries which Bosque vaguely describes. In fact, Bosques CN 9503/1 report gives no specific details about how this alleged strike occurred such as by hand, foot or which hand or foot. The reason why this report is vague and generalized is because Bosque lied, did not really witness inmate allegedly "striking," Andreas (who was behind Bosque as shown on camera), and used this undocumented, unfilmed, incident to these officer's advantage to conspire and fabricate a false assault charge.

4).     The officers involved in this incident had motive, intention and a reason to fabricate this false charge and narrative of incident. For e.g., there is no doubt that Bosque is retaliating against this inmate, who had recently filed an Administrative Grievance, (D.O.C. CN 9602, IGP# 137-19-312) around May 2, 2019, against Bosque and other officers for, amongst other things, shaking down this inmate's cell and removing a number of inmate's property (on a previous occasion) even though these items were not contraband etc. It is ironic that on May 8, 2019 this inmate was again targeted by the same officers for an unusual shakedown. Why this inmate (and a handful of others (?)) out of 100+ other inmates at the end of inmate's recreation period? This was an opportunity for retaliation.

In similar manner, Mr. Gardnier had a motive to lie, retaliate and assault this inmate. On April 30, 2019, the camera recordings of P-Pod will show that Gardnier refused to open inmate's cell door at inmate's medication time, despite several inmates asking Gardnier to open inmate's cell. After inmate voiced his protest and complaint against Gardnier, this same officer is seen on camera coming to inmate's locked cell after inmate's 6:30 PM Rec time, opening inmate's cell to threathen inmate who was inside cell 53. Neither Bosque nor anyone can justify Gardnier's actions of charging into inmate's cell on may 8, 2019 to assault and injure this inmate.

5).   Bosque's false DR/CN9503/1 does not account for the multiple cuts, bruises and other physical, psychological and sexual injuries suffered by this inmate. These officers used excessive, unwonton physical force on a weak, mentally ill inmate. (These officers were well aware of inmate's physical and mental disabilities, for which inmate takes medication every day for almost 5 years at Macdougall, including High Anxiety, Panick attacks, Post Traumatic stress disorder, schitzophrenia etc. Yet they violated the 'use of force' Directives and Protocol, did not give any verbal warnings, did not call for a mental health or medical person to intervene prior to rushing into inmate's cell to assault and victimize inmate with unnessary physical force. Inmate's beard was ripped out violently, his hands and finger bent and bruised, inmate's ribs were pounded by Gardnier and Bosque so now inmate is on pain medication. Inmate was sexually assaulted and started bleeding from rectum for a week and had multiple other injuries. All these unnecessary injuries only because inmate was shouting for help inside of a secure cell.

6).   This inmate is requesting that his assigned Advisor/Advocate and the DR investigator to please preserve, procure and give copy of all evidence, (Pictures of Mr. Andrea's Nose which was allegedly injured, all Camera recordings of incident and 4/30/2019 incident with Gardnier in P-unit, statements etc) to inmate to present a defense at DR Hearing and

also to Present and be examined by the Disciplinary Hearing Officer (DHO) at the hearing

7). This inmate humbly asks that the Disciplinary Hearing staff Please consider mitigating facts such as : a) This inmate has been in Macdougall Jail and other Jails for aprox. 6 years and has no fighting tickets or acts of Violence against anyone. On the contrary, inmate has been the victim of assaults due to inmate's Passive, non-aggressive nature and for the most Part has been Housed by himself for his own Protection.

b) This inmate is very thin, lightweight with abnormally thin arms and hands, has a Prior broken foot injury which makes inmate walk with a noticable limp, is a 52 year old man who cannot generate enough force to throw a Punch or strike anyone to cause the type of injury Lt Bosque describes. The officers involved in this incident are about three times inmate's size and weight, are ten times stronger, muscular and aggressive. Inmate is no match for any of these men and would never dare to challenge, much less 'strike' one of these huge men. There is no logical reason for this inmate to intentionally 'strike' or even attempt to use force against any of these huge officer's much less officer Andreas whom this inmate has never had a problem with. Thus it more logical and reasonable to understand that if there is any injuries to Mr. Andreas, it was accidental. It makes no sense that this inmate would 'strike' Mr. Andreas and not 'strike' two other officers who were already in inmate's cell beating and assaulting this mentally handicapped inmate.

8). If the DR Investigator consults with the unit managers (eg. Captain Ms. Hall, Mr. Santana), Unit Counselors (eg. Ms Arbello, Mr. Rembish, Mr. Carter any block officers or inmates in Macdougall, they will confirm that this inmate is very Passive, non-aggressive and this charge not typical of this inmate's nature, character or behavior

7

9) This inmate wants it put on record that, despite inmate instructing and requesting that DR Investigator Mr. Leone please Provide inmate with the Services of an "Advocate/Advisor, Mr. Leone has not done so. Nor has Mr. Leone provided any of the evidence, reports Copies of Photos or information needed by this inmate to prepare a defense within at least 24 Hours prior to any disciplinary hearing, Persuant to DOC Administrative Directive (AD) 9.5 sec 24 etc. The DR Investigator Mr. Leone has also not responded to this inmate's written requests (including CN 9601). Also Mr. Leone has not presented any papers for this inmate to Sign or Choose an Advocate/Advisor. Mr. LEONE has also not recorded nor interviewed any of the witnesses inmate identified. Also Mr. Leone told this inmate that he would return to interview, take inmate's Statement evidence etc., and Provide the names of Advisors/Advocate but LEONE never did so. Instead Mr. Leone fabricated a Disciplinary Investigation Report (CN 9505) in which Leone falsly recorded that this inmate: a) "declines Use of Advisor" b) an incomplete "inmate's version of incident" which is LEONE's and not inmate's Version of incident c) that inmate did not request witnesses and d) that "inmate verbally declined" to sign this CN 9505. These false and deliberate actions of Mr. LEONE are Unjust, unfair and are Prejudicial to inmate's due process rights, defense and has created a false record. Mr. LEONE has also failed to note the violations of Several DOC protocols by staff involved in Assaulting, using excessive and unnecessary Physical force on this inmate and the fact that the report written by Lieutenant Mr. Bosque, Mr. Mihaliak and other officers not only are Contradictory but are not supported by the Actual Unit Camera Recordings

8

10) Mr. LEONE has also deliberately failed to note for the record that this inmate asserted that Lt. Bosque and officers involved, Assaulted this inmate in retaliation for inmate filing Complaints and Grievance against officers Prior to this incident. Mr. LEONE also failed to Act on inmate's request that he Secure a Copy of the Actual Grievance/Inmate Administrative Remedy (CN9602) and Grievance log documenting Inmate's Complaint against Lt. Bosque. (This inmate has also sent requests to the Grievance Coordinators at Macdougall and Northern CI for Copy of Disposition of this Grievance without any response yet).

11) Mr. LEONE has also failed to act (or note) on inmate's request, that he Secure and Preserve the Camera recording of the Same P-pod unit of Macdougall Prison on April 30, 2019 to establish that at approximately 8:00PM, officer Mr. Gardnier Opened this inmate's locked P-53 Cell door to harass and threathen inmate who was inside of Cell. Gardnier was one of the Officers who ran into inmate's Cell on May 8, 2019 to Assault and use Physical force on this inmate without first Summonning or waiting for Supervising staff. This recording requested, establishes inmate's retaliation Claims.

12) D.R. Investigator Mr. LEONE has failed to record the Names and rank of each staff member who are Seen on the Macdougall CI Camera Recordings on May 8, 2019. Had the Names been recorded, it would clearly establish the fact that the Officers involved in entering inmate's cell to physically Assault this inmate, did so without waiting for Supervisory staff or a videocamera as required by DOC Protocols including the Use of Force Directive

13). Mr. LEONE has deliberately failed to note for the record that a videocamera was not employed before Officers entered inmate's Cell to ~~physically~~ use physical force, nor has Mr. LEONE Secured, Preserved

9

or given a synopsis account of the video camera evidence and at what time the video camera started recording.

14) Mr. LEONE nor any staff have provided this inmate with the investigative reports, witness statement, evidence or any materials needed by this inmate as required within the "at least 24 hours" prior to the DR Hearing as per Administrative Directive 9.5. This is a Due Process Violation.

15) In the Disciplinary Investigation Report (CN 9505/2) dated 6/3/19 but which was not delivered to this inmate within the allowed time period prior to the hearing, in the "Summary" of facts Section, Mr. LEONE reports that officer Andreas "Heard a Commotion coming from P-53 Cell." However, none of these reports say what specifically was "heard" or what this verbal Commotion was. This ommitted fact is significant because it would establish that this inmate never "Charged at Staff" as was falsly reported but rather was calling for help and asking the first officer, (Seen in Camera recording) to call mental health staff before inmate was viciously attacked and beaten by staff. Also, the inmate witnesses whom inmate requested LEONE to call, would have verified inmate's version of events and what was Heard.

16). Also in the CN 9505/2 Mr. LEONE claims that Officer Andreas "Witnessed inmate STEPHENSON ENTANGLED WITH A STAFF MEMBER Who was attempting to Secure the inmate's RIGHT SIDE." This establishes that the first CO who ran into inmate's cell not only used physical force on inmate since inmate was "entangled" but also this officer had Control of Inmate's Right hand which Could not have been free to deliberately, intentionally or recklessly "strike" Officer Andreas. The Fact that Andreas

claims that inmate "delivered a RIGHT HANDED **OPEN FIST** strike to officer's face .. " is significant to show a number of reasons why this inmate could not have deliberately or recklessly acted. First, the claimed injury to Andrea's nose could not have been caused by an OPEN Fist Strike." Second, if inmate intended to "strike" Andreas, it is common sense that Inmate would have made a fist to deliver a 'punch' not 'an 'open palm'. The use of the term "open fist" by these Officers makes no sense, since a 'fist' indicates a closed hand. Third, this inmate requested (but did not receive) the photos or camera evidence taken (if any) of Mr. Andrea's face to examine and show that the claimed injuries to Andrea's face are not consistent with a deliberate or reckless "Open Fist" strike. Fourth, the Officer who first entered inmate's cell (Gardnier), had control of Inmate's hands. In fact, this officer is three times bigger, stronger and cannot claim that he did not have control of this very weak, sickly and extremely thin Armed inmate. It is obvious that inmate's hands are abnormally thin and weak. Furthermore, Leone reports that Andreas witnessed "Inmate STEPHENSON" **ENTANGLED** with a staff member." If inmate was "entangled," inmate could not have recklessly or deliberately struck Andreas.

17) It is also significant that there is no report from the first officer who was "entangled" with inmate as is claimed. The reason for this is that this officer knows full well that he violated the use of force protocol, sexually and physically assaulted this inmate inside of the cell without waiting for a supervisor, giving any verbal commands or waiting for a videocamera as required. Also, this officer had control of inmate's hands, overpowered, restrained inmate and did not witness this inmate recklessly or deliberately striking anyone. He is not even mentioned in any of the reports, because these were fabricated and false.

11

18). Mr. LEONE's CN 9505/2 Report Claims that "Lieutenant MIHALIAK's CN 6603, (which inmate has not been provided with), States that when Officer LAMOUNTAIN GAVE verbal Directions" etc, inmate charged at staff." Not only is this 'Hearsay report' a Fabricated Lie, it's not Supported by the Camera evidence and Contradicts the first CN 9503 Disciplinary Report (dated 5-8-2019), the Camera evidence and Synopsis of video done by Mr. LEONE, Clearly shows that MIHALIAK Could not have Witnessed what he reported as he is not at inmate's door nor in video when these false Claimed events occurred. He and these officers are blatantly Lying and exaggerating, taking advantage of the fact that there is no Camera evidence to document what happened in inmate's Cell. Futhermore, if Inmate had "Charged at staff" as these fabricated reports falsly claims, the dayroom Camera would have Shown inmate Coming out of the Cell because there is Only one staff member Seen on video Standing Outside of Cell P-53 holding a garbage bag. This is verified from Leone's Camera Report at time 8:12:35 through 8:14:08. The Opposite of this false Report is true: ie., this inmate did not "Charge at staff" but rather Staff "Charged" into inmate's Cell to Assault inmate. This is verified on LEONE's CN 9506 at time 8:14:15. Notice that at no time in the video Synopsis does it state that the first officer (holding the garbage bag), is Seen fleeing or being Charged at.

19). LEONES CN 9505/2 report also Conflicts with Lt. Bosque's CN 9503 report. In fact, nowhere in LEONE's CN 9505 is there a Version of Bosque's report. In Bosque's report, Bosque falsly claims that inmate "Attempted" to throw Clothes at Bosque. In LEONE's CN 9505, it is Claimed that inmate "threw" Clothes at staff. Obviously these versions Conflict and are false. Furthermore, in the video,

at the times described, there is no clothes seen being thrown at any staff, Bosque is not seen in the video standing outside the cell with Officer Andreas conversing with inmate and significantly, Bosque's version clearly ommits the fact (shown in video) that an officer already charged into inmate's cell prior to it Bosquey even arriving at and charging into inmate's cell before Andreas. It is also important to note that Mihaliaks CN6603 was fabricated after Bosque's CN9503 and was obviously a coached attempt to conform with Bosque's false rendition of events. It Mihaliak's report is also illogical. This inmate has been through scores of cell searches over several years at MacDougall Prison and has never once resisted, or not complied with such searches. Furthermore, this indigent inmate has no electronics or non-state property of any worth and has never been charged with having contraband. There is no logical reason for this inmate to "strip naked, throw clothes and charge at staff" or take any actions described in this report. These reports are fabricated, false narratives aimed to cover-up and excuse the illegal actions of these staff who retaliated against, assaulted and battered this mentally handicapped inmate in his own cell.

20). Leone's and Mihaliak's reports also omit and try to diminish the injuries suffered by this inmate. There is only one mention of inmate's thumb having a "Superficial Cut." The actual photos taken by the state trooper/police on May 8, 2019 of inmate's injuries show that Inmate's thumb and nail were ripped open, Inmate had several cuts and bruises to his wrist, feet, legs etc and inmate's lengthy beard was obviously ripped out and torn. Inmate was bleeding from anus for weeks after, had bruised ribs, suffered pain, headaches etc. Significantly, there is no bruises etc to inmates hands that would

13

be consistent with the type of "Strike" needed to cause the type of Claimed injuries to Officer Andreas Nose.

21). In Mr. Leone's CN9506, LEONE reports that at 8:14:15", (2) staff Enter WITH ONE STAFF MEMBER OUTSIDE." LEONE is careful not to to identify who these staff Were by name. The reason for this is Because the video actually shows that before these "2" staff entered inmate's Cell, there was already an officer inside inmate's Cell P-53 Assaulting a restrained inmate. Leone deliberately omits this fact and the part of the video which clearly shows the first Officer (Gardnier) running into inmate's Cell Unsupervised and by himself. The video will also show that it Bosque violated DOC Use of force protocol by directly involving himself in Restraining Inmate and using unwarranted Physical force to Assault inmate. Leone reports that at 8:14:08 "inmate's in the Dayroom begin to take notice of a the beginnings of a Commotion in P-53 Cell.." What is odd about Leone's report is that LEONE is Making up Subjective terms to describe his opinion of what other inmates are doing. Notice he uses the Words "Beginning of a Commotion?" He cannot say what the "Commotion" was. The fact is that the only alleged "Commotion" was that other inmates heard this inmate Screaming for help. as he was being assaulted inside the Cell.

22). It is also Significant that it is claimed that officer Andreas was Sent to St. Francis Hospital, when there is a Hospital at MacDougall facility. If Andrea's was injured as claimed, Why was he not immediately treated by any of Several Nurses Available at MacDougall? These Officers are exaggerating these events and NOW here has this inmate been presented with any proof or photos of these claimed injuries. In Bosques Report, No physical evidence or witnesses are Noted.

14