UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH STEPHENSON,<br>   *Plaintiff*, | :<br>:<br>: | Case No. 3:22-cv-644 (SVN) |
| v. | :<br>: | |
| CARLENE DAVIS, *et al.*,<br>   *Defendants*. | :<br>: | October 4, 2023 |

## **INITIAL REVIW ORDER**

Plaintiff, Joseph Stephenson, a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), has filed a *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983. The Amended Complaint is seventy-eight pages in length and appends 121 pages of exhibits, and brings claims against approximately thirty Defendants in their official and individual capacities.[1]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the

---

[1] It is difficult to ascertain the exact number of Defendants that Plaintiff intended to name in the Amended Complaint, as it includes two captions and a separate listing of Defendants in the body of the pleading. ECF No. 1 at 1, 9, 25–78.

Amended Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows.

## I. FACTUAL BACKGROUND

While the Court does not set forth all of the facts alleged in Plaintiff's Amended Complaint (ECF No. 50), it summarizes his basic factual allegations here to give context to its ruling below.[3]  When conducting an initial review pursuant to 28 U.S.C. § 1915A(b), the Court "must accept as true all factual matters alleged in a complaint."  *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017).

In the spring of 2019, Plaintiff was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall").  ECF No. 50 at 10, 13.  Plaintiff asserts that, during this time, he was mentally and physically disabled within the meaning of the Americans with Disabilities Act.  *Id.* at 13, 21–22.

On April 5, 2019, Plaintiff filed an administrative grievance pertaining to an incident in which inmates were detained in a gym while officers searched their cells.  *Id.* at 13, ¶ 1.  On April 30, 2019, Officer Gardiner refused to let Plaintiff leave his cell for recreation or to receive medication, and insulted Plaintiff with racial slurs.  *Id.* ¶ 2.  Later, Officer Gardiner opened Plaintiff's cell door, stood in the doorway, and promised further harassment in the future.  *Id.*

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See, e.g.*, *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement," does not meet the facial plausibility standard.  *Id.* (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[3] Where paragraph numbers are easily identifiable, the Court has identified them.  Otherwise, the Court cites to pages of Plaintiff's Amended Complaint.

Plaintiff believes that he was subjected to this treatment in retaliation for his April 5, 2019, grievance filing. *Id.*

On May 8, 2019, over lunch, Officer Bosque, along with other correctional officers, confronted Plaintiff and vowed to "get even" with Plaintiff for his complaints. *Id.* ¶ 3. Officer Bosque then ordered Plaintiff to throw away his yet-uneaten food and return to his cell. *Id.* That evening, Officer Gardiner, again, refused to permit Plaintiff to leave his cell to receive medication. *Id.* at 14, ¶ 4.

On the night of May 8, 2019, Plaintiff was sleeping naked in his cell, when he was suddenly awoken by Officer Lamountain ordering him to clear his cell for a search. *Id.* ¶ 5. As Plaintiff tossed items into a bag held by Officer Lamountain, he panicked and called for mental health staff. *Id.* Officer Lamountain ignored this request. *Id.*

While clearing his cell, Plaintiff knelt down to pick up clothes. *Id.* ¶ 6. In apparent response to this action, Officer Gardiner ran into Plaintiff's cell and grabbed Plaintiff by the throat. *Id.* Officer Gardiner then beat Plaintiff and fondled his genitals. *Id.* While allegedly fondling Plaintiff, Officer Gardiner allegedly stated: "This camel jockey sand-n***** needs to be f***** up the ass for complaining." *Id.* at 49, ¶ 16. When Plaintiff screamed, Officer Gardiner choked him. *Id.* at 14, ¶ 6. While this happened, Officer Lamountain laughed and insulted Plaintiff with racial slurs. *Id.* Eventually, Officers Bosque and Andreas arrived and joined Officer Gardiner in a protracted beating and sexual assault. *Id.* ¶ 7. Later still, Lieutenant Mihaliak, and other unknown correctional officers, joined in Plaintiff's beating. *Id.* While Plaintiff's beating continued, some unknown officers (named in the Amended Complaint as "John and Jane Doe") passively observed and/or intentionally blocked the view of a security camera. *Id.* at 14, ¶ 6; *id.* at 44–45, ¶ 16.

When correctional officers were finished beating and sexually assaulting Plaintiff, they concocted a story that Plaintiff had assaulted staff by throwing a cloth at Officer Lamountain and punching Officer Andreas. *Id.* at 14, ¶ 9. They then escorted Plaintiff to a restrictive housing unit ("RHU"). *Id.* ¶ 10. En route to the RHU, Officer Gardiner bent Plaintiff's wrists in an intentionally painful manner. *Id.*

At the RHU, multiple officers—including Officers O'Neil and Yohe—strip-searched Plaintiff and forcibly placed a "spit veil" over his head. *Id.* at 16, ¶ 13; *id.* at 27, ¶ 9. Correctional officers then called a law enforcement officer, Officer Atkins, to investigate whether Plaintiff had committed a criminal assault, and not to investigate whether the officers had assaulted Plaintiff, as Plaintiff had requested. *Id.* at 14, ¶ 10. Officer Atkins' subsequent investigation does not appear to have contemplated the possibility that Plaintiff had been the victim of crimes committed by correctional officers. *Id.* at 17, ¶ 9. Plaintiff alleges that Officer Atkins declined to document injuries that he incurred during his interaction with correctional officials. *Id.*[4]

Eventually, Nurse Burns examined Plaintiff's injuries, which Plaintiff asserts to have included: a broken tooth, cuts, bruises, bloody stool, and a "torn beard." *Id.* ¶ 15. However, her examination was brief, and Plaintiff alleges that she purposefully understated the extent of his injuries. *Id.* at 18, ¶ 15.

On May 9, 2019, Plaintiff was interviewed by Dr. Coleman, a psychologist serving the MacDougall inmate population. *Id.* at 19, ¶ 17. Dr. Coleman was skeptical of Plaintiff's claim that he had been attacked and sexually assaulted by correctional officers and would later file a report opining that Plaintiff's account of events was "predominantly fabricated with an intent to

---

[4] Though the Amended Complaint suggests otherwise, *see* ECF No. 50 at 7, ¶ e, public records available by searching the State of Connecticut's Judicial Branch website relating to criminal convictions for Plaintiff's name and birth year of 1966 indicate that Plaintiff has pleaded guilty to a misdemeanor assault offense related to his May 8, 2019, interaction with correctional officers.

deny responsibility for striking an officer (intentional or inadvertent) and to retaliate against officers with PREA allegations." *Id.* at 19, 81. Dr. Coleman further asserted that his opinion was informed by his review of a video recording that "challenges" Plaintiff's version of events. *Id.* at 81. Plaintiff alleges that Dr. Coleman merely reviewed a video of his transport to the RHU and did not view a video of the encounter during which he was allegedly beaten and sexually assaulted. *Id.* at 20, ¶ 17.

Following Plaintiff's interview with Dr. Coleman, another MacDougall psychiatrist, Dr. Zahedi, placed Plaintiff on "behavioral observation status." *Id.* at 19, ¶ 17. While under observation, Plaintiff was placed in a "freezing" isolation cell wearing only a rough "turtle suit" (*i.e.*, a smock designed such that it cannot be used for self-harm). *Id.* Plaintiff was also deprived of his prescription eyeglasses, which caused him painful headaches and loss of vision, and he was given low-quality "bag meals" during his observation. *Id.* at 33–34, 36, ¶ 13. Plaintiff remained in his isolation cell twenty-four hours a day. *Id.* at 19, ¶ 17.

Because of the events on May 8, 2019, Defendants Leone (the disciplinary investigator), Kristine Barone (the Warden of McDougall), Dave Maiga (the head of the DOC's classification and population management of inmates), and William Mulligan (the then-District Administrator) allegedly conspired to initiate disciplinary and administrative segregation ("AS") placement proceedings against Plaintiff. *Id.* at 23–24, 28, 31–32, 50–55, 61–64. In anticipation of Plaintiff's AS placement, DOC officials transferred him to Northern Correctional Institution ("Northern"), a maximum-security prison. *Id.* at 31–32, 67.

Plaintiff's disciplinary proceeding culminated in a finding that he was guilty of assaulting a DOC employee. *Id.* at 104. As punishment, Plaintiff was placed on punitive segregation for thirty days, lost commissary privileges for sixty days, lost phone privileges for ninety days, and

forfeited sixty days of Risk Reduction Earned Credits ("RREC"). *Id.* at 104, 108. Plaintiff's AS proceedings culminated in continued AS placement. *Id.* at 143.

## II.  DISCUSSION

Through his Amended Complaint, Plaintiff expresses an intent to bring numerous federal and state claims against the Defendants. Because the Amended Complaint asserts these claims haphazardly, without clearly explained theories of liability, the Court looks to the substance of Plaintiff's allegations to identify potentially cognizable causes of action.

### A. Official Capacity Claims

To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants, all of whom are state employees, such claims are barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Accordingly, all official capacity claims are dismissed, pursuant to 28 U.S.C. § 1915A(b)(1). Although Plaintiff seeks declaratory relief in the form of a declaration "that actions of Defendants violate federal constitutional rights," ECF No. 50 at 14, such a request is not one for prospective injunctive relief that could be permitted as an exception to the Eleventh Amendment under *Ex parte Young*, 209 U.S. 123 (1908). *See Green v. Mansour*, 474 U.S. 64 (1985). Therefore, Plaintiff cannot proceed on his request for declaratory relief.

### B. Cognizable Claims

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally protected rights. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). The Court will permit five § 1983 claims to proceed past initial review, for further development of the record.

**First**, the Court will permit Plaintiff to proceed with a First Amendment retaliation claim against Officer Gardiner in his official capacity. To state a First Amendment retaliation claim, a plaintiff must allege (1) that the speech at issue was protected; (2) that the defendant took an adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Here, Plaintiff has alleged that he engaged in constitutionally protected speech by filing a grievance, *see id.*, and that this motivated Officer Gardiner to severely beat and sexually assault him just over a month later. These allegations suffice to state a cognizable retaliation claim. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (Second Circuit has "no trouble finding" that a "severe beating" could constitute adverse action, as it would deter a person of ordinary firmness from exercising his rights).

**Second**, the Court will permit Plaintiff to proceed with an Eighth Amendment claim against the Defendants who participated in, or passively observed, Plaintiff's alleged beating and sexual assault. The Eighth Amendment forbids correctional officers from applying force "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (internal quotation marks and citation omitted). Accepting Plaintiff's allegations as true, officers harmed him for sadistic reasons. And, if some officers passively observed Plaintiff's alleged beating and sexual assault, they may be held liable for the excessive force of their colleagues by virtue of their failure to intervene. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used . . . or (3) that any constitutional violation has been committed by a law enforcement official." (cleaned up)).

Plaintiff is permitted to proceed with his Eighth Amendment excessive force and failure to intervene claim against only those officers who allegedly participated in, or passively witnessed, acts of excessive force, however. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (cleaned up)).  Thus, the Court liberally construes the Amended Complaint as stating a cognizable Eighth Amendment claim against the following Defendants: Officer Gardiner, Officer Lamountain, Officer Bosque, Officer Andreas, Lieutenant Mihaliak, Officer O'Neil, Officer Yohe, Officer John Doe, and Officer Jane Doe.  Plaintiff is not permitted to proceed with an excessive force or failure to intervene claim against any other Defendants.

**Third**, the Court will permit Plaintiff to proceed with an Eighth Amendment claim against Dr. Zahedi arising from the conditions of Plaintiff's confinement.  This claim shall proceed primarily on the theory that Dr. Zahedi ordered Plaintiff's placement in a "freezing" observational cell with inadequate clothing.  *See Walker v. Schult*, 717 F.3d 119, 126 (2d. Cir. 2013) ("[I]t is well settled that exposing prisoners to extreme temperatures … may violate the Eighth Amendment.").  The Court will also permit development of the record on the theory that Plaintiff was wrongfully deprived of adequate nutrition and prescription eyeglasses while held in observation.  The Court notes that a successful Eighth Amendment claim against Dr. Zahedi will ultimately require not just proof of inhumane conditions of confinement, but also proof that Dr. Zahedi was aware of, and deliberately indifferent to, Plaintiff's confinement in those inhumane conditions.  *See Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020) (a plaintiff asserting a conditions of confinement claim must show that a defendant "personally knew of and disregarded an excessive risk to [his or her] health or safety").

**Fourth**, the Court will allow Plaintiff to proceed with his Fourteenth Amendment claim asserting violations of his procedural due process rights by Defendant Leone during his disciplinary proceedings. *See, e.g.*, ECF No. 50 at 50–54, ¶ 17. A plaintiff has a right to due process if there is a risk of infringement upon a liberty interest. *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). A prisoner's liberty interest is implicated by prison discipline, such as confinement in a restricted housing unit, "only if the discipline imposes an atypical and significant hardship in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include [1] the extent to which the conditions of disciplinary segregation differ from other routine prison conditions and [2] the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (cleaned up).

For purposes of initial review, Plaintiff has alleged that he endured unusually restrictive housing conditions as a result of the punitive segregation imposed on him. Considering the duration factor, Plaintiff's thirty-day punitive segregation sanction sits on the cusp of being a punishment that constitutes a significant hardship implicating his procedural due process rights. *See Palmer*, 364 F.3d at 65–66 ("In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short—less than [ ] 30 days … and there was no indication that the plaintiff endured unusual [restrictive housing] conditions.").

The inquiry relevant to the atypicality factor is whether the conditions of punitive segregation, which was imposed by the disciplinary hearing officer, are materially different than the conditions of AS, where Plaintiff was confined before the hearing officer's decision. *See* ECF

9

No. 50 at 104, 142–43. The DOC's administrative directives, attached to the Amended Complaint, show that punitive segregation conditions of confinement are quite similar to "Phase One" AS conditions of confinement. *Id.* at 151–55. For instance, while on both punitive segregation and AS Phase One, the inmate is directly observed by a correctional officer not less frequently than every fifteen minutes, and placement of the inmate on in-cell restraint status must be approved by the shift commander or unit manager. *Id.* at 152. Cell searches, showers, meals, and television access are also treated the same in both placements. *Id.* at 153–54. Arguably, inmates on punitive segregation status have slightly more freedom in some respects, as they are allowed to work in cleaning and food service, while inmates in AS Phase One are not; they are also allowed recreation without handcuffs on holidays, while inmates in AS Phase One must wear handcuffs at all times unless they are in a secure area. *Id.* at 153. But inmates in punitive segregation have no programming, unlike inmates in AS Phase One, and are generally not allowed visits or telephone usage, which are minimally permitted in AS Phase One. *Id.* at 154. Because the loss of programming, visitation, and telephone access upon placement in punitive segregation constituted a material change in the conditions of his confinement, Plaintiff has sufficiently alleged, for purposes of initial review, a constitutionally protected liberty interest.

Procedural due process rights therefore attached to Plaintiff's disciplinary hearing. While due process protections afforded to a prison inmate do not equate to "the full panoply of rights due a defendant in . . . [criminal] proceedings," *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), an inmate is entitled to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

The Second Circuit has emphasized that, in the context of disciplinary proceedings, "the *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (emphasis in original).

Here, Plaintiff alleges that Defendant Leone deprived Plaintiff of his right to "receive and use information" to prepare an effective defense by failing to provide him with "any required materials" prior to his disciplinary hearing and "actively resisted/impeded Plaintiff's efforts to obtain such information." ECF No. 50 at 52–53. Although these allegations are sparse and unsupported by factual details, they are sufficient to state a procedural due process claim for purposes of initial review. Therefore, Plaintiff's due process claim against Defendant Leone may proceed.[5]

**Fifth**, for similar reasons, the Court will allow Plaintiff to proceed with a Fourteenth Amendment claim asserting violations of his procedural due process rights by Officer Tugie, who was the hearing officer presiding over Plaintiff's AS placement proceedings. *See, e.g.*, ECF No. 50 at 61–64, ¶ 19. For initial review purposes, the Court presumes that Plaintiff had a liberty interest in remaining free from continued or indefinite AS placement, given that it represents a significantly more restrictive placement than the conditions of ordinary confinement.

"When an inmate has a liberty interest in remaining free from AS placement, prison officials must provide him with some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding the matter." *Baltas v. Rizvani*, No. 3:21-cv-436 (MPS), 2022 WL 17251761, at *11 (D. Conn. Nov. 28, 2022) (quoting *Proctor v.*

---

[5] Plaintiff was also sanctioned by forfeiture of RREC, ECF No. 50 at 104, but he emphasizes that he is not challenging this aspect of his disciplinary sanction, *id.* at 51, ¶ 17. The Court notes that Plaintiff would not be able to proceed with a § 1983 claim relating to this sanction unless he waived any challenge to the duration of his confinement. *See Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006).

11

*LeClarie*, 846 F.3d 597, 609 (2d Cir. 2017)).[6]  Plaintiff concedes that he received notice of the charges against him, though he disputes the evidence supporting those charges.  ECF No. 50 at 61–62.  He claims that he was handicapped in his ability to present his views to Officer Tugie because he did not receive copies of the evidence that supported the charge and other records material to his defense.  *Id.* at 61–64, ¶ 19.  Plaintiff also appears to have desired an "advocate" to represent him during his AS placement hearing.  *Id.*  While "the right to know evidence supporting prison disciplinary rulings is not absolute," *Sira*, 380 F.3d at 74, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges."  *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988).  When the inmate is confined in restrictive housing full-time, the "duty of assistance is greater because the inmate's ability to help himself is reduced."  *Id.*  As Plaintiff alleges he was deprived of the opportunity to review the evidence and an advocate to assist him with the proceedings presided over by Officer Tugie, and because he was confined in AS while preparing for his hearing, the Court will permit the due process claim against Officer Tugie to proceed past initial review.

### C. Incognizable Claims

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff

---

[6] *Proctor* cites *Hewitt v. Helms*, 459 U.S. 460, 474 (1983), as "describing what process is due from prison officials making" administrative segregation determinations.  846 F.3d at 609.  But part of *Hewitt*'s holding—that a liberty interest could arise from prison regulations, 459 U.S. at 471—was sharply criticized in *Sandin*.  515 U.S. at 482–83 (describing the "undesirable effects" produced by *Hewitt* and "return[ing] to the due process principles" that were "correctly established and applied in *Wolff* . . ."). The continuing validity of *Hewitt* is therefore in question.  To the extent *Wolff* sets out greater procedural protections for inmates facing disciplinary sanctions than does *Hewitt*, the Court applies the *Wolff* criteria for purposes of initial review.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

The Amended Complaint is far from a short and plain statement of Plaintiff's claims. Additionally, as previously noted, the Amended Complaint passingly asserts many claims against many individuals. The Court does not address the merits of each passingly asserted claim. With respect to these claims, it suffices to note that a plaintiff cannot support his or her pleading with "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). The Court will briefly address claims that, though incognizable, are developed or raised repeatedly in the Amended Complaint.

    *1. Conspiracy Claims*

Throughout the Amended Complaint, Plaintiff vaguely conveys a belief that Defendants were involved in a grand conspiracy to violate his federal rights. However, even pre-*Iqbal*, "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" was deemed incognizable. *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983). Thus, the Court dismisses Plaintiff's § 1983 conspiracy claims.

    *2. False Report Claims*

Throughout the Amended Complaint, Plaintiff asserts that various Defendants violated his due process rights by intentionally or negligently filing reports inaccurately reporting that he had engaged in misconduct. However, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Broddie v. Schnieder*, 105 F.3d 857, 862 (2d

Cir. 1997). Likewise, Plaintiff has not sufficiently alleged a constitutional violation against Nurse Burns for purportedly downplaying his injuries in a medical report. Thus, the Court dismisses Plaintiff's § 1983 false report claims.

### 3. Supervisory Liability Claims

Plaintiff seeks to hold many of the Defendants liable for the constitutional torts of their subordinates simply by virtue of their supervisory authority. However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *Tangreti*, 983 F.3d at 616. Thus, the Court dismisses Plaintiff's supervisory liability claims.

### 4. Prison Rape Elimination Act Claims

Plaintiff raises claims against many Defendants for their alleged failure to comply with the Prison Rape Elimination Act ("PREA"). However, courts in this District have repeatedly held that "the PREA does not create a private right of action for prisoners." *Johnson v. Cook*, 3:19-cv-1464 (CSH), 2021 WL 2741723, at *7 (D. Conn. July 1, 2021) (cleaned up) (collecting cases). Thus, the Court dismisses Plaintiff's PREA claims.

### 5. ADA and Rehabilitation Act Claims

Plaintiff raises claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act against many Defendants. The basis for these claims appears to be that Defendants harmed Plaintiff while knowing that he was disabled within the meaning of the ADA. ECF No. 50 at 21, ¶ 18.

To establish an ADA or Rehabilitation Act claim, a prisoner must show that he or she is a qualified individual with a disability and that he or she was denied an opportunity to participate in a service, program, or activity by reason of his or her disability. *See Wright v. N.Y. State Dep't of*

*Corr.*, 831 F. 3d 64, 72 (2d Cir. 2016).  Plaintiff has not alleged that any of the Defendants prevented him from participating in a service, program, or activity because of his disability.  Thus, the Court dismisses Plaintiff's ADA and Rehabilitation Act claims.

### 6. *Breach of Contract Claims*

Throughout the Amended Complaint, Plaintiff asserts breach of contract claims against Defendants, allegedly for failing to carry out their duties under DOC policies.  *See, e.g.*, ECF No. 50 at 47.  Plaintiff supports these claims by simply alleging that Defendants violated administrative directives or statutes.  *Id.*

A state law breach of contract claim requires a plaintiff to allege the existence of a legally enforceable agreement between the parties.  *See Sullivan v. Thorndike*, 104 Conn. App. 297, 303 (2007).  Here, Plaintiff has not alleged that the entered into a legally enforceable agreement with any of the Defendants.  Thus, the Court dismisses his breach of contract claims.

### 7. *Uniform Procedures Act Claims*

Plaintiff contends that some of the Defendants have violated the "Uniform Procedures Act" through their violations of DOC administrative directives.  *See e.g.*, ECF No. 50 at 60.  The Court presumes that Plaintiff means to allege violations of Connecticut's Uniform Administrative Procedures Act ("UAPA").  However, "the UAPA does not apply to DOC's Administrative Directives under Connecticut law."  *Baltas v. Maiga*, 3:20-cv-1177 (MPS), 2021 WL 2206966, at *2 n.3 (D. Conn. June 1, 2021); *see also Pierce v. Lantz*, 113 Conn. App. 98, 104–05 (2009).  Thus, the Court dismisses Plaintiff's UAPA claims.

### 8. *Negligence Claims*

Throughout the Amended Complaint, Plaintiff asserts that various Defendants caused him harm through the negligent performance of their official duties.  But, as a matter of state statutory

law, Connecticut's "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003). Thus, the Court dismisses Plaintiff's negligence claims.

### 9. Denial of Grievance Claims

Plaintiff asserts that some of the Defendants violated his rights by improperly denying his administrative grievances. *See e.g.*, ECF No. 50 at 27–28, ¶ 10. "It is well established, however, that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008); *see also Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018) (summary order); *Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance or to have a grievance properly processed." (citing cases)). Thus, the Court dismisses any constitutional claims pertaining to the denial of Plaintiff's administrative grievances.

### 10. Prison Transfer Retaliation Claims

At several points in the Amended Complaint, Plaintiff appears to allege that he was transferred to Northern as an act of retaliation. *See, e.g.*, ECF No. 50 at 31–32, ¶12. However, he also states that DOC officials transferred him to Northern to effectuate his AS placement. *Id.* at 31–32, 67. Because the Amended Complaint fails to allege a plausible causal connection between the transfer and any protected activity, and because it does allege a non-retaliatory reason for the transfer, the Court dismisses any retaliation claims Plaintiff intended to bring pertaining to his prison transfer.

For the reasons described above, therefore, these claims are incognizable.

## ORDERS

The Court enters the following orders:

**(1)** Plaintiff may **PROCEED** with the following claims: (1) a First Amendment retaliation claim against Officer Gardiner in his individual capacity; (2) an Eighth Amendment excessive force/failure to intervene claim against Officer Gardiner, Officer Lamountain, Officer Bosque, Officer Andreas, Lieutenant Mihaliak, Officer O'Neil, Officer Yohe, Officer John Doe, and Officer Jane Doe in their individual capacities; (3) an Eighth Amendment conditions of confinement claim against Dr. Zahedi in his individual capacity; (4) a procedural due process claim against Officer Leone in his individual capacity in connection with Plaintiff's disciplinary hearing; and (5) a procedural due process claim against Officer Tugie in his individual capacity in connection with Plaintiff's AS hearing.

**(2)** All other claims that Plaintiff sought to bring through the Amended Complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Clerk is directed to terminate as parties to this action all Defendants other than those noted above.

**(3)** As the Court has already once permitted Plaintiff the opportunity to file an amended complaint, *see* ECF No. 35, he must file a motion for leave to amend if he seeks to further amend his complaint in light of this ruling. Any motion for leave to amend must set forth the reasons why he should be allowed to again amend his complaint and attach the proposed Second Amended Complaint. Plaintiff is forewarned that, if the Second Amended Complaint does not set forth a "short and plain statement of the claim" *and* rectify the pleading deficiencies explained in this ruling, it will not be accepted for filing, and the case will proceed as to the Amended Complaint reviewed in this ruling. If no motion for leave to amend is filed by **November 3, 2023**, the Court

will proceed to ordering service of the Defendants against whom claims are allowed to proceed in this order.

**(4) Change of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated and even if he is transferred to a new facility. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address, if Defendants have appeared through counsel.

**SO ORDERED** at Hartford, Connecticut, this 4th day of October, 2023.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE